## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHECKPOINT FLUIDIC SYSTEMS | * | CIVIL ACTION NO. 10-4505 |
| INTERNATIONAL, LTD. | * | |
| | * | |
| **Plaintiff** | * | SECTION: R |
| VERSUS | * | JUDGE SARAH S. VANCE |
| | * | |
| RAY A. GUCCIONE, SR. and | * | MAGISTRATE: 1 |
| RAM REPAIRS, LLC | * | MAG. JUDGE SALLY SHUSHAN |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Ray A. Guccione Sr. ("Mr. Guccione") and RAM Repairs, LLC ("RAM"), through undersigned counsel, submit the following Answer, Affirmative Defenses, and Counterclaims to the Complaint filed by Plaintiff.

### Answers to Parties, Jurisdiction and Venue

1.

Defendants admit, upon information and belief, that CheckPoint Fluidic Systems International, Ltd. ("CheckPoint") is a Texas limited partnership with its principal place of business in the Parish of St. Tammany.

2.

RAM Repairs, LLC ("RAM") is a Louisiana limited liability company with its principal place of business in the Parish of Plaquemines, Louisiana.

Defendants otherwise admit the allegations contained in Paragraph 2.

3.

Defendants admit that they conduct business in the State of Louisiana and that Mr. Guccione is a resident of the State of Louisiana.  Defendants deny that they have committed acts that violate the laws of the United States or the laws of the State of Louisiana.  To the extent that the allegations contained in Paragraph 3 call for a legal conclusion, such allegations do not require an answer.

4.

The allegations contained in Paragraph 4 call for a legal conclusion and do not require an answer.

5.

The allegations contained in Paragraph 5 call for a legal conclusion and do not require an answer.

**<u>Answers to Factual Allegations</u>**

6.

The pumps developed by Cross Pump were developed for use in industries, including oil and gas exploration, production and refining.

Defendants otherwise admit the allegations contained in Paragraph 6.

7.

The Sales Contract for Cross Pump International, Inc. and the Agreement of Limited Partnership for CheckPoint Fluidic Systems International, Ltd. are the best evidence of their contents, and are pleaded herein as though copied *in extenso*.  Elliot/Ellis Enterprises, Inc. was a Delaware corporation.  Upon information and belief, Elliott Ellis Enterprises, Inc. is now known as C-Pace, LLC, which is a non-Louisiana limited liability company  (hereinafter "C-Pace").

Defendants otherwise deny the allegations contained in Paragraph 7.

8.

The Sales Contract for Cross Pump International, Inc. is the best evidence of its contents, and is pleaded herein as though copied *in extenso*.  Certain cash payments were made to Cross Pump by C-Pace, and certain royalty payments have been paid to Mr. Guccione since approximately 2000.

Defendants otherwise deny the allegations contained in Paragraph 8 for lack of sufficient information to justify a belief therein.

9.

The Confidentiality and Non-Competition Agreement by and between C-Pace and Mr. Guccione is the best evidence of its contents, and is pleaded herein as though copied *in extenso*.

Defendants otherwise deny the allegations contained in Paragraph 9.

10.

Mr. Guccione became an employee and limited partner of CheckPoint on November 1, 1993.

Defendants otherwise deny the allegations contained in Paragraph 10.

11.

CheckPoint has designed, manufactured, and sold chemical injection pumps, pump packages, and other components used in the oil and gas production, exploration, and refining industries.

Defendants otherwise deny the allegations contained in Paragraph 11 for lack of sufficient information to justify a belief therein.

12.

Mr. Guccione had access to certain information maintained by CheckPoint, including design drawings, customer lists, customer information, pricing information, and vendor information.

Defendants otherwise deny the allegations contained in Paragraph 12.

13.

Mr. Guccione's employment with CheckPoint ended in December 2005.

Defendants otherwise deny the allegations contained in Paragraph 13.

14.

RAM submitted certain documentation to the Louisiana Secretary of State on or about December 20, 2005.  Its Operating Agreement is dated February 2, 2006.  Mr. Guccione maintains an approximate 36% ownership interest in RAM.

Defendants otherwise deny the allegations contained in Paragraph 14.

15.

RAM manufactures, markets, and sells certain pumps called "Monkey Pumps."  These pumps are generally marketed as alternatives to a variety of injection pumps, including CheckPoint pumps.

Defendants otherwise deny the allegations contained in Paragraph 15.

16.

Defendants deny the allegations contained in Paragraph 16.

17.

Defendants deny the allegations contained in Paragraph 17.

## Answers to Claims for Relief

## Count 1: Violations of Lanham Act (Unfair Competition)

18.

Defendants deny the allegations contained in Paragraph 18.

19.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-18.

20.

RAM manufactured pumps that are similar in function and appearance to certain CheckPoint products.

Defendants otherwise deny the allegations contained in Paragraph 20.

21.

Defendants deny the allegations contained in Paragraph 21.

22.

Defendants deny the allegations contained in Paragraph 22.

23.

Defendants deny the allegations contained in Paragraph 23.

24.

Defendants deny the allegations contained in Paragraph 24.

25.

Defendants deny the allegations contained in Paragraph 25.

## Count 2: Violations of the Lanham Act (Trademark Infringement and Dilutions)

26.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-25.

27.

Whether CheckPoint is a trademark calls for a legal conclusion to which no response is necessary.

Defendants otherwise deny the allegations contained in Paragraph 27.

28.

Defendants deny the allegations contained in Paragraph 28.

29.

Defendants deny the allegations contained in Paragraph 29.

30.

Defendants deny the allegations contained in Paragraph 30.

## Count 3: Violations of the Lanham Act (False Advertising/False Labeling/ False Designation of Origin)

31.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-30.

32.

Defendants deny the allegations contained in Paragraph 32.

33.

Defendants deny the allegations contained in Paragraph 33.

34.

Defendants deny the allegations contained in Paragraph 34.

35.

Defendants deny the allegations contained in Paragraph 35.

## Count 4: Violations of Louisiana Trade Secrets Act

36.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-35.

37.

Defendants deny the allegations contained in Paragraph 37 for lack of sufficient information to justify a belief therein.

38.

Defendants deny the allegations contained in Paragraph 38 for lack of sufficient information to justify a belief therein.

39.

Mr. Guccione was an employee and a limited partner of CheckPoint.

Defendants otherwise deny the allegations contained in Paragraph 39.

40.

Defendants deny the allegations contained in Paragraph 40.

## Count 5: Violation of Louisiana Unfair Trade Practice and Consumer Protection Law

41.

Defendants re-aver and incorporate by reference its answers to Paragraphs 1-40.

42.

Defendants deny the allegations contained in Paragraph 42.

43.

Defendants deny the allegations contained in Paragraph 43.

44.

Defendants deny the allegations contained in Paragraph 44.

## Count 6: Trademark Infringement and Unfair Competition under Louisiana Law

45.

Defendants re-aver and incorporate by reference their responses to Paragraphs 1-44.

46.

Defendants deny the allegations contained in Paragraph 46.

47.

Defendants deny the allegations contained in Paragraph 47.

48.

Defendants deny the allegations contained in Paragraph 48.

## Count 7: Breach of Confidentiality Agreement

49.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-48.

50.

The Confidentiality and Non-Competition Agreement by and between C-Pace and Mr.

Guccione is the best evidence of its contents, and is pleaded herein as though copied *in extenso*.

Defendants otherwise deny the allegations contained in Paragraph 50.

51.

Defendants deny the allegations contained in Paragraph 51.

52.

Defendants deny the allegations contained in Paragraph 52.

## Count 8: Breach of Fiduciary Duty

53.

Defendants re-aver and incorporate by reference their answers to Paragraphs 1-52.

54.

Defendants admit that Mr. Guccione maintains an ownership interest in a certain percentage of CheckPoint, was CheckPoint's first employee, was an active participant in CheckPoint's business, and was privy to certain information.

Defendants otherwise deny the allegations contained in Paragraph 54.

55.

Defendants deny the allegations contained in Paragraph 55.

56.

Defendants deny the allegations contained in Paragraph 56.

## Answer to Jury Demand

57.

No response is required to Paragraph 57.

## Answer to Prayer for Relief

58.

Defendants deny that Plaintiff is entitled to any judgment in its favor.

## AFFIRMATIVE DEFENSES

And now, further answering, Defendants assert the following Affirmative Defenses.

## First Affirmative Defense

The Complaint fails to state a claim or cause of action upon which relief may be granted.

## Second Affirmative Defense

Defendants deny all allegations contained in the Complaint that Defendants have not specifically admitted above.

## Third Affirmative Defense

Some or all of the claims against Defendants asserted in the Complaint are barred by the applicable statute of limitations, prescriptive and peremptive periods, contractual limitations period, and/or laches.

## Fourth Affirmative Defense

Some or all of the claims asserted against Defendants in the Complaint are barred by the doctrines of waiver, ratification, unclean hands and/or estoppel.

## Fifth Affirmative Defense

Some or all of the claims asserted against Defendants in the Complaint are barred by the principles of *res judicata* and/or collateral estoppel.

## Sixth Affirmative Defense

Defendants at all times complied with all applicable laws, regulations, and standards, including the applicable law governing partnerships.

## Seventh Affirmative Defense

The terms, conditions, and provisions of the documents memorializing Plaintiff's alleged agreement(s) with Defendants (hereinafter "Agreements") are specifically and affirmatively pled herein, as though copied herein *in extenso*, which terms, conditions, and provisions act to bar and/or limit the claims of  Plaintiff.

## Eighth Affirmative Defense

Defendants did not breach any duties owed to Plaintiff, including any duties imposed on Defendants in the Agreements or by law.

**Ninth  Affirmative Defense**

Defendants at all times acted with due care, diligence, in good faith, and without malice.

**Tenth Affirmative Defense**

The claims asserted by Plaintiff should be dismissed or, alternatively, its damages, if any, should be reduced due to failure of conditions precedent.

**Eleventh Affirmative Defense**

Plaintiff has sustained no damages proximately caused by Defendants.

**Twelfth Affirmative Defense**

No act or omission of Defendants was a cause-in-fact of any of Plaintiff's alleged injuries.

**Thirteenth Affirmative Defense**

If there are any damages sustained by Plaintiff, such damages are the result of acts or omissions of parties other than Defendants, and for whom Defendants are not legally responsible.

**Fourteenth Affirmative Defense**

If there are any damages sustained by Plaintiff, Plaintiff has failed to mitigate its damages.

**Fifteenth Affirmative Defense**

Some or all of the claims asserted by the Plaintiff should be dismissed, or alternatively, Plaintiff's damages, if any, should be reduced, due to Plaintiff's own negligent or wrongful conduct.

**Sixteenth Affirmative Defense**

The claims asserted by Plaintiff are barred by the doctrines of accord and satisfaction.

### Seventeenth Affirmative Defense

Defendants cannot be held liable for the fraudulent acts, misrepresentations, or omissions of any other person or party.

### Eighteenth Affirmative Defense

Some or all of the claims asserted against Defendants are preempted or otherwise precluded by the applicable Agreements, statute, regulation or law, including the *Sears-Compco* doctrine.

### Nineteenth Affirmative Defense

Plaintiff has failed to state a claim for unfair methods of competition and/or unfair or deceptive acts in the conduct of a trade or commerce under applicable law.

### Twentieth Affirmative Defense

Plaintiff has failed to meet the statutory requirements for the recovery of damages under a claim for unfair methods of competition and/or unfair or deceptive acts in the conduct of a trade or commerce under applicable law.

### Twenty-first Affirmative Defense

Defendants have, at all times, adequately represented the nature, characteristics, qualities and origin of the goods and services they provide to consumers.

### Twenty-second Affirmative Defense

Defendants have, at all times, adequately represented the source of its products and the identity of the creating company.

### Twenty-third Affirmative Defense

Plaintiff has failed to state a claim alleging the likelihood of or actual confusion on the part of the consumer.

### Twenty-fourth Affirmative Defense

Plaintiff has failed to state a claim alleging infringement of a registered mark.

### Twenty-fifth Affirmative Defense

Plaintiff has failed to state a claim for dilution of a famous mark.

### Twenty-sixth Affirmative Defense

Plaintiff has failed to state a claim for trade dress infringement.

### Twenty-seventh Affirmative Defense

Defendants have not engaged in any activities that are likely to cause confusion of consumers as to the nature, characteristics or origin of their goods and services.

### Twenty-eighth Affirmative Defense

Defendants' products are purchased by discriminating purchasers, who are unlikely to be confused as to the origin of the products they are purchasing.

### Twenty-ninth Affirmative Defense

Plaintiff has acted in a manner that demonstrates its acquiescence in Defendants' activities.

### Thirtieth Affirmative Defense

Any similarity between the products produced by RAM and those produced by CheckPoint are functional, and thus, are not subject to legal protection under trademark or unfair competition laws.

### Thirty-first Affirmative Defense

Defendants have, at all times, fairly used CheckPoint's alleged mark.  *See* 15 U.S.C. § 1115(b)(4).

### Thirty-second Affirmative Defense

Defendants owe no duty to protect or to maintain Plaintiff's alleged trade secrets or allegedly confidential or proprietary information.

### Thirty-third Affirmative Defense

Defendants did not use any allegedly confidential, proprietary or secret information in breach of any duty to maintain the secrecy of such information.

### Thirty-fourth Affirmative Defense

Plaintiff failed to take reasonable precautions to guard its allegedly confidential, proprietary or secret information.

### Thirty-fifth Affirmative Defense

Some or all of Plaintiff's claims under the Louisiana Unfair Trade Practices Act are statutorily perempted.

### Thirty-sixth Affirmative Defense

Plaintiff has failed to adequately plead any claim under the Louisiana Unfair Trade Practices Act.

### Thirty-seventh Affirmative Defense

Defendants have, at all times, acted in a fair and reasonable manner and in compliance with applicable law.

### Thirty-eighth Affirmative Defense

Defendants have not engaged in any activities that would offend public policy, or that are immoral, unethical, oppressive, unscrupulous, or injurious to consumers.

### Thirty-ninth Affirmative Defense

Plaintiff has failed to state a claim for breach of fiduciary duty under applicable law. Defendants, at all times, acted in good faith, complied with applicable law, and fulfilled the terms and conditions set forth in the Agreements.

### Fortieth Affirmative Defense

Some or all of Plaintiff's claims are barred by the Louisiana Restraint of Business Statute, Louisiana Revised Statute 23:921.

### Forty-first Affirmative Defense

Plaintiff is not entitled to injunctive relief because they are unable to demonstrate: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the nonmovant if the court grants the injunction; and (4) that the injunction will not disserve the public interest. *See Advocacy Ctr. for the Elderly and Disabled v. Louisiana Dept. of Health and Hosp.*, --F. Supp. 2d---, 2010 WL 3199848, at *4 (E.D. La. 8/9/10) (J. Vance) (citing *La. Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217 (5th Cir. 2010); *DSC Commc'n Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)); s*ee also Foster v. Super Vending, Inc.*, No. 94-3637, 1995 WL 7430, at *8 (E.D. La. Jan. 9, 1995).

### Forty-second Affirmative Defense

Defendants reserve the right to assert any additional affirmative defenses that may be discovered during the course of additional investigation and discovery, as additional defenses become available under law, or as additional claims or theories of recovery are asserted.

**WHEREFORE,** Defendants respectfully pray that Plaintiff take nothing by reason of its Complaint, and that judgment be rendered in favor of Defendants.  Defendants further pray that

they be awarded their costs of suit, including reasonable attorneys' fees incurred in defense of this action, and for such other relief as the Court deems just and proper.

## COUNTERCLAIM

The Counterclaim Plaintiffs Ray A. Guccione, Sr. and RAM Repairs, LLC represent as follows:

### Jurisdiction and Venue

1.

This Court has jurisdiction and venue over this matter pursuant to 28 USC § 1367(a). Additionally, the claims made herein are brought as compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13(a).

2.

Venue is proper since the counterclaims are compulsory counterclaims filed pursuant to Federal Rule of Civil Procedure 13(a).

### The Parties

### The Counterclaim Plaintiffs

3.

The Counterclaim Plaintiffs are as follows:

(a)     Ray A. Guccione, Sr., a person of full age and majority who is domiciled in the Parish of Jefferson, State of Louisiana ("Mr. Guccione"); and

(b)     RAM Repairs, LLC, a Louisiana limited liability company with its principal place of business in the Parish of Plaquemines, State of Louisiana ("RAM").

## Counterclaim Defendants

4.

The Counterclaim Defendants are as follows:

(a)     CheckPoint Fluidic Systems International, Ltd., a Texas limited partnership, whose general partner is domiciled in the Parish of St. Tammany, State of Louisiana ("CheckPoint");

(b)     C-Pace, LLC f/k/a Elliott/Ellis Enterprises, Inc., a limited liability company formed under the laws of the State of Delaware, whose sole member is domiciled in the Parish of St. Tammany, State of Louisiana ("C-Pace"); and

(c)     Andrew C. Elliott, a person of the full age of majority who is domiciled in the Parish of St. Tammany, State of Louisiana ("Elliott").

## Factual Allegations

5.

CheckPoint was formed as a Texas limited liability partnership on or about November 1, 1993.

6.

C-Pace is the general partner of CheckPoint.

7.

Mr. Guccione was an employee of CheckPoint from November 1993 through December 2005 and maintains a right, title, and interest in CheckPoint.

8.

By way of letter dated December 15, 2005, CheckPoint terminated Mr. Guccione's employment.

9.

On numerous occasions, Mr. Guccione has requested that CheckPoint or C-Pace purchase his right, title, and interest in CheckPoint, or that he be allowed to sell such interest to a CheckPoint limited partner.

10.

CheckPoint and/or C-Pace have/has refused to purchase or ratify the sale of Mr. Guccione's interest in CheckPoint, thereby forcing Mr. Guccione to remain a passive investor in CheckPoint.

11.

After Mr. Guccione's employment with CheckPoint ended, RAM was formed to repair oilfield process equipment and, in 2010, began selling pneumatic injection pumps under the brand name "Monkey Pumps."

12.

Mr. Guccione serves as the managing member of RAM, and owns an approximate 36% interest therein.

## Count I – Action for Accounting

13.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 12 as though copied *in extenso*.

14.

C-Pace entered into a Sales Contract with Cross Pump International, Inc. ("Cross Pump") on or about October 18, 1993 (the "Royalty Agreement"), whereby C-Pace purchased certain of Cross Pump's assets and agreed to pay to Cross Pump, *inter alia*, a series of royalty payments

and supplemental royalty payments (collectively "Royalty Payments") based on the value of certain additional assets and services owned by Cross Pump.

15.

According to the Royalty Agreement, Royalty Payments are to be made at the end of each full quarter of operation starting from January 1, 1994, and are to be calculated using the cumulative gross revenues, as defined in the Royalty Agreement.

16.

Royalty Payments are due within 30 days from the end of each quarter, and are payable for a period of 99 years.

17.

On or about July 7, 2000, C-Pace and Cross Pump entered into a Royalty Assignment Agreement whereby Cross Pump transferred and assigned to Mr. Guccione all of Cross Pump's right, title, and interest in and to 20% of the Royalty Payments due to Cross Pump under the Royalty Agreement.

18.

Royalty Payments made pursuant to the Royalty Assignment Agreement are to be made directly to Mr. Guccione in the same manner and pursuant to the same terms that C-Pace is obligated to make such payments to Cross Pump under the Royalty Agreement.

19.

Upon information and belief, C-Pace has, from time to time, intentionally and maliciously refused to tender the required Royalty Payments to Mr. Guccione, has intentionally and maliciously failed to make Royalty Payments in a timely fashion, and has intentionally and

maliciously failed to remit the appropriate sums due as Royalty Payments to Mr. Guccione under the Royalty Agreement and the Royalty Assignment Agreement.

20.

On more than one occasion, Mr. Guccione has requested to review, audit, or be provided with the books and records of CheckPoint and C-Pace to ensure that proper sums were in fact remitted as Royalty Payments under the Royalty Agreement and the Royalty Assignment Agreement.

21.

Mr. Guccione has not received the requested financial information, nor has he been allowed to review or audit the books and records of CheckPoint and/or C-Pace.

22.

Upon information and belief, C-Pace and Elliott have intentionally and maliciously delayed and denied Mr. Guccione access to the requested financial information regarding Royalty Payments due.

23.

Mr. Guccione is entitled to and demands an accounting of all transactions upon which Royalty Payments are/were to be paid under the Royalty Agreement and the Royalty Assignment Agreement.

24.

Mr. Guccione has been injured by the failure of Elliot and C-Pace to provide the requested accounting under the Royalty Agreement and the Royalty Assignment Agreement. Mr. Guccione is entitled to all damages resulting therefrom, foreseeable or not, in an amount to be shown at trial.

## Count II – Bad Faith Breach of Contract

25.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 24 as though copied *in extenso.*

26.

Upon information and belief, C-Pace, under the direction of Elliott, has intentionally, maliciously, and in bad faith:

(a)     refused to tender the required Royalty Payments to Mr. Guccione;

(b)     failed to make Royalty Payments in a timely fashion; and

(c)     failed to remit the appropriate sums due as Royalty Payments to Mr. Guccione under the Royalty Agreement and Royalty Assignment Agreement.

27.

The above-described actions of C-Pace and Elliott constitute bad faith breaches of the Royalty Agreement and the Royalty Assignment Agreement.  As a result of these actions, Mr. Guccione has been injured and is entitled to recover all pecuniary and nonpecuniary damages, foreseeable or not, caused by these actions, including  those allowed pursuant to Louisiana Civil Code article 1994, *et seq.* and all applicable law.

## Count III – Breach of Fiduciary Duty

28.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 27 as though copied *in extenso.*

29.

C-Pace, under the control of Elliott, has served as general partner of CheckPoint since its inception, and owes a fiduciary duty to both the partnership and its limited partners.

30.

Upon information and belief, C-Pace and Elliott have breached the duty owed by the general partner to CheckPoint and its limited partners by the following actions:

a.      Upon information and belief, Elliott has caused CheckPoint to lease unneeded real estate and has entered into a long-term lease agreement for property in which Elliott has an ownership interest, without full disclosure to CheckPoint or its limited partners;

b.      Upon information and belief, Elliott has misappropriated CheckPoint funds to invest in affiliated companies in his own name and/or under his control, which compete with CheckPoint and/or engage in related activities, without full disclosure to CheckPoint or its limited partners;

c.      Upon information and belief, Elliott has caused CheckPoint to lend money and extend credit, at or below market interest rates, to the aforementioned companies, CheckPoint employees, and himself, and to reap financial benefit from these transactions, without full disclosure to CheckPoint and its limited partners;

d.      C-Pace and Elliott have ignored Mr. Guccione's numerous requests to inspect the financial records of CheckPoint and to provide a complete accounting of CheckPoint's financial dealings to Mr. Guccione and CheckPoint's other limited partners, in violation of the CheckPoint Partnership Agreement and applicable law;

e.      Upon information and belief, Elliott has caused CheckPoint to tender excessive compensation to C-Pace and Elliott, in violation of the CheckPoint Partnership Agreement and applicable law; and

f.      Despite Mr. Guccione's numerous requests to withdraw from CheckPoint or to sell his interest therein, C-Pace and Elliott have, in bad faith, intentionally and maliciously refused to ratify or approve the withdrawal or sale.

31.

As a result of these breaches, Mr. Guccione has been injured and is entitled to recover all damages caused by these breaches in an amount to be shown at trial.

## Count IV – Violation of the Louisiana Unfair Trade Practices Act and Consumer Protection Laws, Louisiana Revised Statute 51:1401, *et seq.* ("LUTPA")

32.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 31 as though copied *in extenso*.

33.

CheckPoint, C-Pace, and Elliott have violated the LUTPA by engaging in the following activities:

a.      Elliott has accused RAM and Mr. Guccione of "stealing" CheckPoint's allegedly confidential information, while being in a position to know that such information is public information, and has made such wrongful accusations to third parties in an attempt to disparage and to interfere with the business of RAM and Mr. Guccione;

b.      CheckPoint, C-Pace and Elliott have maliciously and wantonly attempted to influence others to forego dealing with RAM and Mr. Guccione; and

c.     CheckPoint, C-Pace and Elliott have maliciously and wantonly contacted RAM suppliers and clients to suggest that such suppliers and clients cease conducting business with RAM and Mr. Guccione.

34.

The above-described actions of CheckPoint, C-Pace, and Elliott constitute deceptive acts or practices in the conduct of business, trade or commerce in violation of Louisiana law.  As a result of these actions, Mr. Guccione and RAM have been injured and are entitled to injunctive relief and to recover all damages allowed by law, including treble damages, costs, and attorneys' fees.  *See* La. Rev. Stat. 51:1409(A).

## Count V – Tortious Interference with Business Relations

35.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 34 as though copied *in extenso*.

36.

The malicious and wanton actions alleged in Paragraphs 32 through 34 constitute tortious interference with business relations.  Mr. Guccione and RAM have been injured by these actions and are entitled to injunctive relief and to recover all damages caused thereby.

## Count VI – Civil Conspiracy

37.

Counterclaim Plaintiffs re-aver and incorporate by reference the allegations contained in Paragraphs 1 through 36 as though copied *in extenso*.

38.

Upon information and belief, CheckPoint, C-Pace, and Elliott conspired with one another and others to commit intentional and willful acts causing harm to Mr. Guccione and RAM, and as such are subject to liability as co-conspirators pursuant to Louisiana Civil Code article 2324.

### Prayer for Relief

**WHEREFORE**, Counter Plaintiffs Mr. Guccione and RAM respectfully request judgment as follows:

1.      Issuing preliminary and permanent injunctions enjoining CheckPoint, C-Pace, and Elliott, and any employees, agents, servants, officers, representatives, directors, attorneys, successor, affiliates, assigns, and entities owned or controlled by them, and all those in concert and participation with them from engaging in any activity constituting a violation of the LUTPA, tortious interference with business relations, or violation of any applicable consumer protection law;

2.      Directing CheckPoint, C-Pace, and Elliott to provide to Mr. Guccione access to all financial information regarding or relating to the payment of royalties under the Royalty Agreement and the Royalty Assignment Agreement;

3.      Directing CheckPoint, C-Pace, and Elliott to provide to Mr. Guccione access to all financial information regarding or relating to CheckPoint and its business dealings as permitted by the Agreement of Limited Partnership for CheckPoint Fluidic Systems International, Ltd.;

4.      Awarding Mr. Guccione and RAM all damages allowed by law that were caused by the acts forming the basis of this Counterclaim, including without limitation, all available awards of consequential, punitive, exemplary, and treble damages;

5.    Awarding Mr. Guccione and RAM all costs of these proceedings, including reasonable attorneys' fees expended in defense of the Complaint and prosecution of the Counterclaim;

6.    Awarding Mr. Guccione and RAM interest, including pre-judgment interest on all sums awarded;

7.    Directing such other action as the Court may deem appropriate under the law; and

8.    Awarding Mr. Guccione and RAM such other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of February, 2011.

**McGLINCHEY STAFFORD, PLLC**

 */s/ Gerard E. Wimberly, Jr.*
**GERARD E. WIMBERLY, JR., T.A. (#13584)**
**DANIEL T. PLUNKETT (#21822)**
**ANGELINA CHRISTINA (#28530)**
**LAURA SETTLEMYER (#32243)**
601 Poydras Street, 12th Floor
New Orleans, LA 70130-3477
Telephone: (504) 586-1200
Facsimile: (504) 910-9362
Email: gwimberly@mcglinchey.com
          dplunkett@mcglinchey.com
          achristina@mcglinchey.com
          lsettlemyer@mcglinchey.com

***Attorneys for Ray A. Guccione, Sr. and RAM Repairs, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of February, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the all counsel of record.

          */s/ Gerard E. Wimberly, Jr*
**Gerard E. Wimberly, Jr.**