UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CHECKPOINT FLUIDIC SYSTEMS                 CIVIL ACTION

INTERNATIONAL, LTD.


VERSUS                                     NO: 10-4505


RAY GUCCIONE, SR. and RAM                  SECTION: R(1)

REPAIRS, LLC.


## ORDER AND REASONS

In this trademark infringement, false advertising and unfair competition case, plaintiff CheckPoint Fluidic Systems International, Ltd., C-Pace and Andrew Elliott, move to dismiss the counterclaims of defendants Ray Guccione, Sr. and RAM Repairs, LLC.  Because defendants' counterclaims for an accounting, breach of contract and breach of fiduciary duty are not asserted against an opposing party, they must be dismissed. The Court has jurisdiction over defendants' compulsory counterclaims for violations of Louisiana Unfair Trade Practices Act ("LUTPA"), tortious interference with business relations and civil conspiracy, but defendants' allegations fail to state

1

plausible claims and also must be dismissed.  The Court GRANTS
plaintiff's motion to dismiss defendants' counterclaim with leave
to amend.


**I. BACKGROUND**

Plaintiff CheckPoint is a limited partnership that designs,
manufactures and sells chemical injection pumps and pump
components.  Defendant Guccione was formerly the vice president
of Cross Pumps International, Inc., a company that designed
chemical injection pumps.  On October 18, 1993, Cross Pumps
entered into a sale agreement with Elliott/Ellis Enterprises,
Inc. ("Elliott Enterprises"), in which it transferred to Elliott
Enterprises its physical inventory, all of the patents it owned
or was developing, and exclusive rights to its intellectual
property.  Elliott Enterprises paid Cross Pumps $15,000 for its
goodwill,[1] and $22,000 for its patents, intellectual property and
inventory.  Elliott Enterprises also agreed to pay royalties to
Cross Pumps for 99 years in the amount of three percent of the
domestic revenues and one percent of the international revenues
generated by the assets transferred in the sale.  The sales
contract contains a confidentiality agreement, as well as a non-
competition covenant that bound the seller and its officers not

_____

[1]     A portion of the goodwill payment was made as a pre-
payment on July 19, 1993.

to compete either directly or indirectly with the buyer.

CheckPoint represents that Elliott Enterprises assigned CheckPoint its rights under the sales agreement when the CheckPoint limited partnership was formed on November 1, 1993. CheckPoint does not attach the limited partnership agreement to its complaint. CheckPoint asserts that it paid $35,000 for the assignment and that it assumed the royalty obligation to Cross Pumps as part of the deal. CheckPoint further alleges that it has made royalty payments and is entitled to enforce the confidentiality and non-competition covenants granted by Guccione as part of the sales contract.

Guccione became an employee and limited partner of CheckPoint in November 1993. CheckPoint alleges that in this role, he had access to valuable proprietary information. Guccione's employment with CheckPoint ended on December 15, 2005. Guccione continues to be a limited partner of CheckPoint.

After leaving CheckPoint, Guccione became the managing partner and a thirty-six percent owner of RAM, a company that manufactures chemical injection pumps called "Monkey Pumps". CheckPoint alleges that RAM was formed one business day after Guccione's employment with CheckPoint came to an end. CheckPoint complains that RAM and Guccione designed the Monkey Pump through the use of its confidential and proprietary information and trade secrets. As a result, CheckPoint sued Guccione and RAM for

3

violations of the Lanham Act, trademark infringement and dilution, and false advertising.[2]  Plaintiff also asserts violations of the Louisiana Trade Secrets Act, the Louisiana Unfair Trade Practice and Consumer Protection Act, state law trademark infringement, and breach of fiduciary duty.

In response, defendants filed counterclaims against CheckPoint, as well as C-Pace, LLC, the general partner of CheckPoint, and Andrew Elliott, the alleged principal of C-Pace.[3] Defendants assert some of their counterclaims exclusively against C-Pace and Elliott.  Specifically, defendants allege that C-Pace and Elliott breached the royalty agreement and owe an accounting of "all transactions upon which Royalty Payments are/were to be paid".  Defendants contend that in 2000, Guccione received the right to receive twenty percent of the royalties due Cross Pumps. Second, defendants allege that C-Pace, under the direction of Elliott, has breached its fiduciary duty as a general partner of CheckPoint.  Third, defendants allege that CheckPoint, C-Pace and Elliott violated LUTPA, tortiously interfered with business relations, and engaged in a civil conspiracy.

CheckPoint, C-Pace and Elliot now move to dismiss defendants' counterclaims for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) and for failing to state a claim

---

[2]    R. Doc. 1.

[3]    R. Doc. 9.

upon which relief can be granted under FED. R. CIV. P. 12(b)(6). CheckPoint, C-Pace and Elliot argue that defendants' asserted counterclaims are not counterclaims.  They next argue that if the allegations are considered counterclaims, they are permissive counterclaims, and as such, they require an independent basis for jurisdiction.  Checkpoint, C-Pace and Elliot contend that such a basis does not exist.  CheckPoint, C-Pace and Elliot further assert that if the Court has jurisdiction over the claims for violations of LUTPA, tortious interference with business relations, and conspiracy, the claims should be dismissed for failure to state a claim.

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim.  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, subject matter jurisdiction must be decided first because "the court must find jurisdiction before determining the validity of a claim." *Moron v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the

5

court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). A court generally cannot go outside the complaint in determining a motion to dismiss. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). A court may, however, "rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when

6

the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true.  *Id*.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

7

## III. DISCUSSION

*A. Opposing Party Requirement*

As noted, three of defendants' counterclaims are asserted only against nonparties, C-Pace and Elliott.  A counterclaim may not be directed "solely against persons who are not already parties to the original action." *United States ex. rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 265 F.R.D. 266, 270 (E.D. La 2010)(citing 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1435); *See* FED. R. CIV. P. 13; *FDIC v. Bathgate*, 27 F.3d 850, 873-74 (3d Cir. 1994) (finding that because Rule 13(h) authorizes the court to join additional parties only in order to adjudicate a counterclaim already before the court, a counterclaim may not be directed solely against persons who are not already parties to the original lawsuit); *Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1504 n.1 (9th Cir. 1986) (stating that a claim "styled" as a counterclaim "was in fact a third party claim because Local 12 and Chaves were not already parties to the action"); *Johansen v. United States*, 392 F. Supp. 2d 56, 59 (D. Mass 2005)(observing that "[i]t is a fairly basic premise that counterclaims can be lodged only against those entities which are already parties to the action.").  If the counterclaim is not asserted against an existing party, "neither the counterclaim nor

8

the party to be added will be allowed in the action." *Branch Consultants*, 265 F.R.D. at 270 (citing 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1435).  Thus, defendants' counterclaims for an accounting, breach of contract, and breach of fiduciary duty, which are asserted only against C-Pace and Elliott, nonparties to the original action, are not cognizable as counterclaims under Rule 13.

Defendants contend that because CheckPoint, C-Pace and Elliott are related, they should qualify as "opposing parties" for purposes of Rule 13(a).  Defendants merely allege that C-Pace is the general partner of CheckPoint, and that Elliott is the sole member of C-Pace.  Defendants counterclaims fail to assert a plausible factual basis to disregard the separate legal status of the CheckPoint partnership, the C-Pace LLC, and the individual, Andrew Elliott, and to treat all of the parties as one entity for the purposes of this litigation.  Defendants have not alleged or briefed an alter ego relationship or a single business enterprise.  *See e.g., Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010) (explaining that the tests for an alter ego relationship and a single business enterprise are similar and include an analysis of such factors as common ownership, directors, officers, employees, and offices; unified control; inadequate capitalization; non-compliance with corporate

formalities; centralized accounting; unclear allocation of profits and losses between corporations; one corporation paying the salaries, expenses or losses of another corporation; and undocumented transfers of funds between entities.)  These analyses are highly fact-specific, and defendants' conclusory allegation that Elliott, as the "principal" of C-Pace, controls both C-Pace and CheckPoint, does not provide a plausible basis for the Court to make such a determination.  Moreover, defendants' breach of fiduciary duty claim against Elliott and C-Pace is not tantamount to a claim against CheckPoint, as defendants plainly allege that CheckPoint is a victim of their breach of fiduciary duty.[4]

The cases that defendants cite as support for their argument do not alter the Court's conclusion.  In *Avemco Ins. Co. v. Cessna Aircraft Co.*, an insurer brought a separate suit for indemnity and contribution against a party that sued its insured in an earlier suit.  11 F.3d 998 (10th Cir. 1993).  The defendant argued that the claim should have been asserted as a counterclaim in the first action.  The Tenth Circuit agreed.  The Court noted that because Rule 13 would bar the party-insured from raising a compulsory counterclaim in later litigation, the subrogated insurer was likewise barred.  The insurer had "no greater rights

---

[4]     *See* R. Doc. 9 at ¶ 30.

than those possessed by its insured, and its claims [we]re
subject to the same defenses." *Id.* at 1000.   The present case
does not involve the relationship between an insurer and insured.
Nor does it raise issues of subrogation.   The *Avemco* case is
inapposite.

In *Banco Nacional v. Cuba*, the Second Circuit concluded that
because Banco Nacional and the government of Cuba were one and
the same for purposes of the litigation, Cuba qualified as an
opposing party under Rule 13. 478 F.2d 191, 193 n.1 (2d Cir.
1973).   Importantly, in that case the Court determined that Banco
Nacional was the alter ego of the government of Cuba.   As noted,
defendants do not allege that CheckPoint, C-Pace and Elliott are
alter egos, nor do they set forth facts from which such a legal
conclusion could be drawn.   *Banco Nacional*'s alter ego analysis
is not helpful here.

In *Rohm & Haas Co. v. Brotech Corp.*, a patent holder sued in
the District of Delaware for a preliminary injunction.   The
defendant in that case filed a separate suit against the
plaintiff and six of its past and present subsidiaries in the
Eastern District of Pennsylvania, asserting antitrust, fraud and
RICO violations.   770 F.Supp 928, 929 (D. Del. 1991).   The Court
held that the claims in the Pennsylvania case were compulsory
counterclaims that should have been asserted in the Delaware

11

action.  *Rohm* is inapposite because the claims were asserted against a party to the original suit, as well as against additional parties.  Here, the purported counterclaims are not asserted against an existing party.

Because defendants' claims against C-Pace and Elliott for an action for accounting, breach of contract, and breach of fiduciary duty are asserted against non-parties and do not name the plaintiff, they are not counterclaims.

<u>i. Defendants' Claims do not Satisfy Rule 14</u>

Nor are C-Pace and Elliott properly made parties under Rule 14 of the Federal Rules of Civil Procedure, which governs third-party practice.  Under Rule 14(a)(1), "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  FED. R. CIV. P. 14(a)(1).  This rule is permissive, not mandatory, and to make a proper claim under Rule 14, the defendant must show that the third-party is liable to the defendant and that the liability is "in some way derivative of the outcome of the main claim."  *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *see also Hassan v. La Dep't of Transp.*, 1999 WL 642861, at *2 (5th Cir. July 26, 1999) (stating that Rule 14 'exists to bring in third parties who are *derivatively* liable to the impleading party)(emphasis in

original); *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (finding that the district court's joinder of a party was proper when the claim was derivative of the original action and the party's liability was dependent on the outcome of the original action); *Martin v. Lafon Nursing Facility of the Holy Family*, 2007 WL 4163678, at *2 (E.D. La. Nov. 20, 2007)(explaining that joinder of a third-party defendant is not proper unless their potential liability to the third-party plaintiff is dependent on the outcome of the main claim). The defendants have not demonstrated that either C-Pace's or Elliott's liability to them is dependent upon or derivative of the outcome of the main claims against defendants in this litigation. Hence, defendants' claims against C-Pace and Elliott do not meet the requirements of Rule 14. Defendants' counterclaims for an accounting, breach of fiduciary duty and breach of contract must therefore be dismissed.

>    *B. Jurisdiction Over Defendants' Counterclaims for Violations of LUTPA, Tortious Interference with Business Relations, and Civil Conspiracy*

The Court next considers whether it has jurisdiction over defendants' counterclaims for violations of LUTPA, tortious interference with business relations and civil conspiracy. These counterclaims are asserted against CheckPoint, in addition to C-

Pace and Elliott. The Court will first consider whether it has jurisdiction over these counterclaims as asserted against CheckPoint.

Supplemental jurisdiction permits a federal court to entertain a claim that does not itself invoke an independent basis of subject matter jurisdiction.  Under 28 U.S.C. § 1367(a), when a federal court has original jurisdiction, it has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004). "The question under § 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)(citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  When a counterclaim is compulsory it is within the supplemental jurisdiction of the court because it must arise out of the same transaction or occurrence as the original claim.  *See Transitional Hosps. Corp. of Louisiana v. DBL N. Am., Inc.*, 2002 WL 27767, at *2 (E.D. La. Jan. 8, 2002)(explaining that "it is well-settled" that a

14

compulsory counterclaim is within the ancillary jurisdiction[5] of a federal court)(citing *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988)(stating that a court has jurisdiction over a compulsory counterclaim even without an independent basis)). This means that if defendants' counterclaims are compulsory, this Court has supplemental jurisdiction over them.

A compulsory counterclaim is a claim of the defendant's that arises out of the same transaction or occurrence as the plaintiff's claim. FED. R. CIV. P. 13(a). A compulsory counterclaim must be asserted in a pending case or it will be barred. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993)(noting that a counterclaim arising out of the same occurrence must be brought in the instant action, or it would be barred)(citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)("A counterclaim which is compulsory but is not brought is thereafter barred")). A permissive counterclaim is one that a defendant "may" assert against a plaintiff that does not arise out of the transaction or occurrence as plaintiff's claim. FED. R. CIV. P. 13(b). To determine whether a claim is a

---

[5]    The term supplemental jurisdiction encompasses what courts historically called "ancillary" and "pendent" jurisdiction. *See Griffin v. Lee*, 621 F.3d 380, 384-5 (5th Cir. 2010); 13 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3657.

15

compulsory counterclaim, the Fifth Circuit applies the test articulated in *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, which asks: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim and defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. 104 F.3d 83, 85-86 (5th Cir. 1997)(citing *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992)).  If the answer to any of these four questions is yes, then the counterclaim is compulsory. *Tank Insulation*, 104 F.3d at 86.

Defendants' claims that CheckPoint violated LUTPA, tortiously interfered with their business relations and engaged in a civil conspiracy are compulsory counterclaims.  Defendants allege that CheckPoint made wrongful accusations to third parties that RAM and Guccione stole plaintiff's confidential information and used it to market competing products.  Defendants allege that plaintiffs knew or should have known that the alleged confidential information was publicly available.  Defendants also contend that the counterclaim defendants attempted to influence customers and suppliers to stop doing business with RAM and

16

Guccione.  Clearly these claims are logically connected to
plaintiff's claims against defendants as they revolve around the
same competitive relationship and the use of the same product
information.  Further, the case law supports this conclusion.  In
*Official Airline Guides, Inc. v. Churchfield Publications*, the
Court held that a trademark infringement defendants' counterclaim
for intentional interference with business relations was a
compulsory counterclaim. 756 F. Supp. 1393, 1407 (D. Or. 1990).
There, as here, plaintiffs and defendants were business
competitors.  In their counterclaim, defendants sought to prove
that the plaintiffs filed the lawsuit for oppressive reasons and
attempted to interfere with defendants' business relations with
third-parties.  *Id.* at 1406-07.  The Court found that these
counterclaims were sufficiently related to the plaintiffs' claim
for trademark infringement and dissemination of false and
misleading promotional materials to be deemed compulsory.  *See
also*, *United Artists Corp. v. Masterpiece Prods.*, 221 F.2d 213
(2d Cir. 1955)(holding that a claim for unfair trade practices
and conspiracy arose from the same transaction as plaintiff's
claim alleging copyright infringement and unfair trade practices
by defendant).  Similarly, in *Papadopoulos v. Douglas*, 2001 WL
877608, at *2 (5th Cir. July 18, 2001), the Court found that
claims asserted in a second suit for intentional copying of

17

plaintiff's designs were compulsory counterclaims that should
have been filed in an earlier action against this party.  In so
holding, the Court found that there was a logical relationship
between the plaintiff's claim and defendant's counterclaim
because the crux of the dispute was the labeling and
distinctiveness of the products the plaintiff and defendant sold
in competition with each other.  Likewise, plaintiff and
defendants here sell allegedly similar products, and a central
issue is whether plaintiff's product information is legally
protected.  Further, the claim and counterclaim arise out of the
same facts, Guccione's sale of products in competition with
CheckPoint.  Although there are differences between facts of the
claims and the counterclaims, "the identity of issues test does
not require a complete overlap between the claim and
counterclaim." *Id.* (citing 6 CHARLES ALAN WRIGHT, ARTHUR R.
MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1410).
The counterclaims for violations of LUTPA and tortious
interference are therefore sufficiently related to claims
plaintiff asserts to be compulsory, and the Court therefore has
jurisdiction over these counterclaims against CheckPoint.

Next, the Court must determine whether it has jurisdiction
over the non-parties named in the counterclaims for violations of
LUTPA, tortious interference and conspiracy.  Significantly,

18

unlike the claims for an accounting, breach of contract and breach of fiduciary duty, these counterclaims are asserted against the plaintiff in addition to the non-parties.  If a counterclaim is asserted against an existing party, that counterclaim may also name non-parties in addition to the existing party, subject to Rules 19 and 20 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 13(h); *State Nat. Ins. Co. Inc. v. Yates*, 391 F.3d 577, 577 n.2 (5th Cir. 2004)(explaining that Rule 13(h) permits the joinder of additional parties to a counterclaim "in accordance with Rules 19 and 20")(citing FED. R. CIV. P. 13(h)); *see also Core 4 Kebawk, LLC, et al v. Ralph's Concrete Pumping, Inc.*, 2011 WL 743455, at *1 (E.D. La. Feb. 22, 2011)(finding that a non-party to the suit was properly made a party through a counterclaim).

### i. Rule 19

Rule 19 provides for the compulsory joinder of "all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).  A party should be joined under Rule 19 if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence

may: (i) as a practical matter impair or impede the person's
ability to protect the interest; or (ii) leave an existing party
subject to a substantial risk of incurring double, multiple, or
otherwise inconsistent obligations because of the interest.  FED.
R. CIV. P. 19; *Hood ex rel. Mississippi v. City of Memphis,* 570
F.3d 625, 629 (5th Cir. 2009).

Defendants have not argued that C-Pace and Elliot should be
joined to the litigation under Rule 19, nor do they assert
sufficient facts from which the Court could draw such a
conclusion.  Defendants make no claim that in the absence of C-
Pace or Elliott, the Court will be unable to provide complete
relief to CheckPoint, RAM and Guccione.  Nor have defendants
demonstrated that either C-Pace or Elliot claim an interest
relating to the subject of the present action that they would be
impeded in protecting without their joinder.  Absent any
assertion that C-Pace and Elliott are indispensable parties or
factual support for the proposition that complete relief cannot
be granted to CheckPoint, RAM and Guccione without the presence
of C-Pace and Elliott, the Court will not compel joinder under
Rule 19.

<u>ii. Rule 20</u>

Federal Rule of Civil Procedure 20 governs the permissive
joinder of additional parties.  Rule 20(a)(2) permits the joinder

20

of defendants[6] in one action if (1) plaintiffs assert a right to relief against the defendants jointly or severally; (2) that right to relief arises from a single transaction or occurrence; and (3) there is a question of law or fact common to all of the defendants. *See* Fed. R. Civ. P. 20(a)(2).  The Fifth Circuit has described Rule 20 as creating a two-prong test that allows joinder when (1) claims arise out of the same transaction, occurrence, or series of transactions and (2) there is at least one common question of law or fact linking all of the claims. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)(finding that the district court did not abuse its discretion in denying joinder of over 800 decertified Fair Labor Standards Act claimants under Rule 20).  When this test is satisfied, a district court may still refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *Id.*(finding that district courts have considerable discretion to deny joinder)(citing *inter alia Applewhite v. Reichhold Chems., Inc.,* 67 F.3d 571, 574 (5th Cir. 1995)).

To determine what constitutes a "transaction or occurrence"

---

[6]     Because defendants assert a counterclaim, they are considered plaintiffs and the parties they join are viewed as defendants for the purpose of Rule 20, making Rule 20(a)(2) the applicable rule.  7 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1657.

for purposes of Rule 20(a) and the first prong of the test allowing joinder, courts look to the definitions of these same terms in the analysis of compulsory counterclaims under Rule 13(a). *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973)(citing Rule 13 to affirm the district court's joinder under Rule 20(a)); *Porter v. Milliken & Michaels, Inc.*, 2000 WL 1059849, at *2 (E.D. La. Aug. 1, 2000)(relying on *Alexander v. Fulton Cnty*, 207 F.3d 1303 (11th Cir. 2000)); *see also,* 7 CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE § 1653 (explaining that the transaction and occurrence test is "reminiscent" of the logical-relationship test used to determine the meaning of transaction or occurrence for purposes of Rule 13(a)).  Based on the above analysis finding that defendants' counterclaims satisfy the logical relationship test of Rule 13(a), the Court finds that the counterclaims for violations of LUTPA, tortious interference with business relations, and conspiracy are part of the same transaction or occurrence as plaintiff's claims.  The counterclaims therefore pass the first prong of the Rule 20(a) test.

The second requirement of a Rule 20 joinder is that a question of law or fact common to all of the defendants will arise in the action.  Rule 20(a) does not require that every question of law or fact in the action be common among the

22

parties, but rather allows for joinder if there is even one common question.  *Porter*, 2000 WL 1059849, at *2 (relying on *Alexander*, 207 F.3d at 1324). There are common questions among the parties as to whether CheckPoint, C-Pace and Elliott engaged in activities and behavior that violated LUTPA or caused tortious interference with defendants' business relations.  The Court therefore finds the second prong of the Rule 20(a) joinder test satisfied, and permits the joinder of C-Pace and Elliott.

### C. 12(b)(6) Analysis of Counterclaims for Violations of LUTPA, Tortious Interference with Business Relations and Civil Conspiracy

Because the Court finds that it has jurisdiction over defendants' counterclaims for violations of LUTPA, tortious interference with business relations and civil conspiracy, it must next address plaintiffs' contention that defendants fail to allege plausible claims under these legal theories.

#### i. Violations of LUTPA

LUTPA provides a cause of action for "any person who suffers any ascertainable loss of money or movable property...as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [the Act]." LA. REV. STAT § 51:1409.  Despite the statute's broad language, the Fifth Circuit defines the prohibited conduct

23

narrowly. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). An unfair practice is "a practice that is unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (citing *Bolanos v. Madary*, 609 So. 2d 972, 977 (La. Ct. App. 1992)). LUTPA does not prohibit "sound business practices". *Id.* This means that not all activity that arguably injures a competitor is a LUTPA violation. *Chemtreat, Inc. v. Andel*, 2003 WL 22466235, at *2 (E.D. La Oct. 29, 2003)(explaining that when two businesses are competing for the same customers, contacting those customers is not a violation of LUTPA). Louisiana businesses may still pursue profit, even at the expense of competitors, as long as the means used to pursue profit are not egregious. *Id.*

To recover under LUTPA, a plaintiff must show an "ascertainable loss of money or moveable property" as a result of the practices of the defendant. LA. REV. STAT § 51:1409; *Strahan v. State*, 633 So. 2d 886, 887 (La. Ct. App. 1994); *Chemtreat*, 2003 WL 22466235, at *3. The plaintiff must also "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Omnitech Int'l, Inc. v. Clorox*, 11 F.3d 1316, 1332 (5th Cir. 1994)(affirming the district court's grant of summary judgment in part because there was no allegation or evidence of fraud). A single action is not sufficient to constitute a LUTPA

24

violation.  *Chemtreat, Inc.*, 2003 WL 22466235, at *2.  An intent
to eliminate competition alone is also insufficient to constitute
a LUTPA violation, and if two businesses are competitors vying
for the same customers, contacting customers is permitted.
*Turner*, 989 F.2d at 1423.  The determination of what constitutes
an unfair trade practice is made by the courts on a case-by-case
basis. *Id*.

　　Defendants do not state a claim under LUTPA because
defendants do not allege actual injury.  An ascertainable loss of
money or property is an essential element of a LUTPA violation.
*See Bobby & Ray Williams P'ship v. Shreveport Louisiana Hayride
Co.*, 873 So.2d 739, 746 (La. Ct. App. 2004) (finding that
plaintiff failed to state a claim under LUTPA where he did not
allege that defendant's conduct caused him to lose money or
property).  Defendants assert that CheckPoint, C-Pace and Elliot
"attempted" to influence others to stop doing business with
Guccione and RAM, but they do not allege that these attempts
resulted in an actual loss of business or any other form of
identifiable damage to their business.  Defendants assert that
they "have been injured," but this vague and general statement is
wholly unsupported by any factual allegations.  The use of
conclusory labels alone is insufficient to state a claim for a
violation of LUTPA. *See Twombly*, 550 U.S. at 555 (explaining that

"a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" (internal citations omitted)).

Defendants' pleadings suffer from other shortcomings in addition to the failure to allege an injury. Defendants allege that Elliott accused them of stealing confidential information when he was "in a position to know" that the information was publicly available. Defendants do not even allege to whom the statements were made. More significantly, defendants do not allege that these statements were intentionally false. "[W]hile in a position to know" is language of constructive knowledge and negligence, and negligence is not a grounds for liability under LUTPA. *See Turner*, 989 F.2d at 1422 (explaining that "mere negligence" is not prohibited conduct under LUTPA). Next, defendants rely on conclusory labels to describe conduct that could be a legitimate business practice. Defendants use the terms "maliciously and wantonly"[7] to describe the manner in which CheckPoint, C-Pace and Elliott contacted RAM suppliers and clients "to suggest" that they stop doing business with RAM and Guccione. That this was done "maliciously and wantonly" is a conclusion. Defendants allege no specifics as to who was contacted, what was said, whether any coercive means were used,

---

[7]    R. Doc. 9 at 23-4.

or what, if any, effect the alleged conduct had.  In *Twombly*, 550 U.S. 544 (2007), the Court was concerned that the plaintiffs' complaint did not set forth a plausible basis to distinguish between prohibited anticompetitive conduct and legitimate business practices.  The same defect infects defendants' allegations here.  Defendants do not state a claim under LUTPA, and their LUTPA claim must be dismissed.

### ii. Tortious Interference with Business Relations

Louisiana courts recognize a cause of action for tortious interference with business relations. *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992).  Article 2315 provides the basis for the tortious interference action. LA. CIV. CODE art. 2315(a).  The cause of action protects businesses from malicious and wanton interference, and permits only interference that is designed to protect an actor's legitimate interest.  *Dussony v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981). Louisiana courts view this cause of action with disfavor. *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834, 841 (La. Ct. App. 2002)(noting that despite its "ancient vintage," Louisiana courts have limited the application of the cause of action).  A claim of tortious interference requires a plaintiff to show improper and intentional influence. *Dussony*, 660 F.2d at 602.  The plaintiff must allege that the defendant actually

prevented the plaintiff from dealing with a third party.
*Marshall Invs. Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, at *5
(E.D. La Sept. 13, 2006)(allegations that statements made by
plaintiff's employee improperly influenced an unknown lender not
to grant defendant a loan satisfied the requirement of actual
interference).  In addition, the plaintiff must demonstrate
actual malice. *JCD Mktg.*, 812 So.2d at 841.  The malice element
"seems to require a showing of spite or ill will, which is
difficult (if not impossible) to prove in most commercial cases
with profit motive present." *Marshall*, 2006 WL 2644959, at *5
(internal citations omitted).

    Defendants assert that CheckPoint, C-Pace, and Elliott
tortiously interfered with their business by engaging in the same
conduct alleged to be a LUTPA violation.  Here, too, defendants'
pleadings are insufficient.  First, defendants fail to allege
that CheckPoint, C-Pace and Elliott actually prevented them from
dealing with a third party, an allegation that is a requirement
of a tortious interference claim. *See Marshall Invs. Corp.*, 2006
WL 2644959, at *5 (explaining that it "[i]s not enough to allege
that a defendant's actions affected plaintiff's business
interests; the plaintiff must allege that the defendant actually
prevented the plaintiff from dealing with a third party"); *Junior
Money* Bags, 970 F.2d at 10 (affirming the district court's

finding that the plaintiffs did not state a claim for tortious interference where they made no showing that the defendants influenced third parties not to do business with plaintiff). Defendants do not allege that the actions of CheckPoint, C-Pace and Elliott had any specific effect on their business relationships or economic opportunities.  Indeed, they do not complain that counterclaim defendants' actions were coercive, but only that they were designed "to suggest" that clients and suppliers stop doing business with Guccione and RAM.  Second, defendants have not supplied any specifics about the challeneged conduct that would permit the Court to distinguish between legitimate business conduct grounded in the protection of a legitimate interest and impermissible interference.  Because defendants have not sufficiently pleaded their claim for tortious interference, the Court must dismiss it.

<u>iii. Civil Conspiracy</u>

Under article 2324 of the Louisiana Civil Code, a person "who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." LA. CIV. CODE art. 2324.  To recover under a conspiracy theory, a plaintiff must demonstrate that an agreement to commit an illegal or tortious act existed, that act was actually committed, that act resulted in the plaintiff's

injury, and there was an agreement as to the intended outcome or result. *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. Ct. App. 2010)(citing *Butz v. Lynch*, 710 So.2d 1171, 1174 (La. Ct. App. 1998)).  Civil conspiracy is not an independently actionable claim under Louisiana law. *Crutcher-Tufts*, 38 So. 3d at 991 (La. Ct. App. 2010)(citing *Ross v. Conoco*, 828 So. 2d 546, 552 (La. 2002)).  Rather, the actionable element is the "tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." *Crutcher-Tufts*, 38 So. 3d at 991 (citing *Ross*, 828 So.2d at 552).  A claim of civil conspiracy cannot stand alone, but must be based on an underlying tort.

Defendants allege that CheckPoint, C-Pace, and Elliott "conspired with one another and others to commit intentional and willful acts causing harm to Mr. Guccione and RAM."[8]  Defendants assert a general claim of conspiracy, but fail to base that claim on any underlying tort.  Defendants make no allegations that CheckPoint, C-Pace and Elliott entered into an agreement to commit an identifiable intentional tort.  A conclusory allegation that CheckPoint C-Pace and Elliott "conspired" is not an actionable claim under Louisiana law.  In addition, the Court has already determined that defendants counterclaim for tortious

---

[8]      *Id.*

interference with business relations is insufficient.  Therefore, even if defendants intended to assert that counterclaim defendants conspired to commit tortious interference with business relations, the conspiracy claim cannot stand when the underlying tort fails.  *See e.g., Crutcher-Tufts*, 38 So. 3d at 991 (affirming the trial court's finding of no cause of action for conspiracy where, among other deficiencies, there was no underlying intentional tort).  The Court must dismiss defendants' claim of civil conspiracy as insufficiently pleaded.

## IV. CONCLUSION

Because the Court finds that the counterclaims for an action for accounting, breach of contract, and breach of fiduciary duty are not asserted against an opposing party, and the compulsory counterclaims for violations of LUTPA, tortious interference with business relations, and civil conspiracy are insufficiently pleaded, the Court GRANTS plaintiff, C-Pace and Elliott's motion to dismiss the counterclaims with leave to amend.

New Orleans, Louisiana, this  28th  day of July 2011.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

31