UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHECKPOINT FLUIDIC SYSTEMS                  CIVIL ACTION
INTERNATIONAL, LTD.

VERSUS                                       NO: 10-4505

RAY GUCCIONE, SR. and RAM                    SECTION: R(1)
REPAIRS, LLC.


**ORDER AND REASONS**

In this trademark infringement, false advertising and unfair competition case, plaintiff CheckPoint Fluidic Systems International, Ltd., and C-Pace and Andrew Elliott, move to dismiss the amended and restated counterclaims of defendants Ray Guccione, Sr. and RAM Repairs, LLC.[1]  The Court does not have subject matter jurisdiction over defendants' counterclaims for breach of fiduciary duty, an accounting, breach of contract, and tortious interference with contract.  Accordingly, the Court GRANTS plaintiff's motion to dismiss.


**I. BACKGROUND**

Plaintiff CheckPoint is a limited partnership that designs, manufactures and sells chemical injection pumps and pump

_____

[1]    R. Doc. 55.

components.  Defendant Guccione was formerly the vice president
of Cross Pump International, Inc., a company that designed
chemical injection pumps.  On October 18, 1993, Cross Pump
entered into a sale agreement with Elliott/Ellis Enterprises,
Inc. ("Elliott Enterprises"), in which it transferred to Elliott
Enterprises its physical inventory, all of the patents it owned
or was developing, and exclusive rights to its intellectual
property.  Elliott Enterprises paid Cross Pump $15,000 for its
goodwill,[2] and $22,000 for its patents, intellectual property and
inventory.  Elliott Enterprises also agreed to pay royalties to
Cross Pump for 99 years in the amount of three percent of the
domestic revenues and one percent of the international revenues
generated by the assets transferred in the sale.  The sales
contract refers to confidentiality and non-competition agreements
that are attached to the contract as "Exhibit D."  There are
three separate agreements.  The first agreement is between
Elliott Enterprises and Barbara Quartana, the Secretary of Cross
Pump, the second agreement is between Elliott Enterprises and
Cross Pump, and the third agreement is between Elliot Enterprises
and Guccione.

CheckPoint represents that Elliott Enterprises assigned
CheckPoint its rights under the sales agreement when the

---

[2]     A portion of the goodwill payment was made as a pre-
payment on July 19, 1993.

CheckPoint limited partnership was formed on November 1, 1993. CheckPoint asserts that it paid $35,000 for the assignment and that it assumed the royalty obligation to Cross Pump as part of the deal.  CheckPoint further alleges that it has made royalty payments and is entitled to enforce the non-competition agreement signed by Guccione contemporaneously with the sales contract.

Guccione became an employee and limited partner of CheckPoint in November 1993.  CheckPoint alleges that in this role, Guccione had access to valuable proprietary information. Guccione's employment with CheckPoint ended on December 15, 2005. Guccione continues to be a limited partner of CheckPoint.

After leaving CheckPoint, Guccione became the managing partner and a thirty-six percent owner of RAM, a company that manufactures chemical injection pumps called "Monkey Pumps". CheckPoint alleges that RAM was formed one business day after Guccione's employment with CheckPoint came to an end.  CheckPoint complains that RAM and Guccione designed the Monkey Pump through the use of its confidential and proprietary information and trade secrets.  As a result, CheckPoint sued Guccione and RAM for violations of the Lanham Act, trademark infringement and dilution, and false advertising.[3]  Plaintiff also asserted violations of the Louisiana Trade Secrets Act ("LTSA"), the Louisiana Unfair Trade Practice and Consumer Protection Act

---

[3]     R. Doc. 1.

("LUTPA"), state law trademark infringement, and breach of fiduciary duty.

In response, defendants filed counterclaims against CheckPoint, as well as C-Pace, LLC, the general partner of CheckPoint, and Andrew Elliott, the alleged principal of C-Pace.[4] Defendants asserted some of their counterclaims exclusively against C-Pace and Elliott.  Specifically, defendants alleged that C-Pace and Elliott breached the royalty agreement and owe an accounting of "all transactions upon which Royalty Payments are/were to be paid".  Defendants asserted that in 2000, Guccione received the right to twenty percent of the royalties due Cross Pump.  Second, defendants alleged that C-Pace, under the direction of Elliott, breached its fiduciary duty as a general partner of CheckPoint.  Third, defendants alleged that CheckPoint, C-Pace, and Elliott violated LUTPA, tortiously interfered with business relations, and engaged in a civil conspiracy.  CheckPoint, C-Pace and Elliot moved to dismiss defendants' counterclaims for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) and for failing to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). The Court granted plaintiff's motion and dismissed defendants' counterclaims with leave to amend.[5]  The Court found that because

---

[4]     R. Doc. 9.

[5]     R. Doc. 41.

defendants' counterclaims for an accounting, breach of contract and breach of fiduciary duty were not asserted against an opposing party, they were not proper counterclaims and dismissed those claims.  The Court held that it had jurisdiction over defendants' compulsory counterclaims for violations of LUTPA, tortious interference with business relations and civil conspiracy, but that defendants' allegations failed to state plausible claims and therefore also required dismissal.

Defendants filed amended and restated counterclaims against CheckPoint, C-Pace, and Elliott.[6]  Defendants added CheckPoint as a party to their claims for an accounting and for bad faith breach of contract.  Defendants also added a new allegation of tortious interference with contract.  Defendants assert this claim against C-Pace and Elliott.[7]

Plaintiff now moves to dismiss the amended counterclaims.[8] First, plaintiff argues that the restated breach of fiduciary duty claim should be dismissed because it is not a counterclaim or a proper third-party claim.  Next, plaintiff asserts that the Court lacks subject matter jurisdiction over the counterclaims

---

[6]     R. Doc. 44.

[7]     Defendants also added additional factual information to their claims for violations of LUTPA, tortious interference with business relations and civil conspiracy.  Because defendants voluntarily withdrew these claims, the Court does not consider them.

[8]     R. Doc. 55.

for an accounting, breach of contract, tortious interference with a contract and breach of fiduciary duty because they are permissive counterclaims without an independent basis for federal jurisdiction.

Defendants contend that the amended counterclaims for an accounting and breach of contract name CheckPoint and are proper counterclaims.  They contend that as a result, C-Pace and Elliot are properly joined under Federal Rule of Civil Procedure 13(h). They also assert that the Court has supplemental jurisdiction over its counterclaims for tortious interference with contract and breach of fiduciary duty.  Plaintiff argues that because C-Pace and Elliot are properly joined defendants for the counterclaims for breach of contract and an accounting, the additional claims may also be asserted against them.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, subject matter jurisdiction must be decided first because "the court must find jurisdiction before determining the validity of a claim." *Moron v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III. DISCUSSION

As there is no independent basis of federal subject matter jurisdiction over defendants' counterclaims, they must be dismissed unless they come within the Court's supplemental jurisdiction under Title 28, United States Code, Section 1367(a). The supplemental jurisdiction statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such

7

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The statute grants jurisdiction over claims that do not independently come within the jurisdiction of the district court but form part of the same Article III "case or controversy" as the federal claim.  *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (citing *Jinks v. Richland County, S.C.*, 538 U.S. 456, 458 (2003)).  To determine whether claims fall under Section 1367(a), the court must ask "whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'"  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523 (1997) ("federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact'"); *see also* WRIGHT & MILLER, 13D FEDERAL PRACTICE & PROCEDURE § 3567.1 (explaining that supplemental jurisdiction "embraces *at least* the Gibbs standard" and "the key to applying Gibbs, and therefore § 1367(a), is giving meaning to the phrase 'common nucleus of operative fact.'").  A loose factual connection

between the claims is generally sufficient.  *See* WRIGHT & MILLER, 13D FEDERAL PRACTICE & PROCEDURE § 3567.1; *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).  A court's determination of whether to exercise supplemental jurisdiction is guided by considerations of judicial economy, convenience and fairness to litigants.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

   *A. Jurisdiction Over Defendants' Counterclaim for Breach of Fiduciary Duty*

   The Court has original jurisdiction over plaintiff's Lanham Act claims and its LUTPA claim.  *See* 15 U.S.C. 1114, *et. seq.*; 28 U.S.C. § 1338.  These claims involve the defendants' alleged misappropriation of trade secrets, improper use of CheckPoint's trademark, and false advertising claims.  Defendants' counterclaim for breach of fiduciary duty involves allegations of misconduct by C-Pace and Elliott, as general partner of CheckPoint, to CheckPoint and the limited partners of CheckPoint. How CheckPoint conducted its finances and whether the general partner misappropriated CheckPoint's funds or engaged in unsound loans and leases are not factual issues that have any bearing on plaintiff's claims for Lanham Act and LUTPA violations. Plaintiff's claims and defendants' counterclaim for breach of fiduciary duty do not share a common nucleus of operative fact. Accordingly, the Court finds that defendants' counterclaim for

breach of fiduciary duty does not fall within its supplemental jurisdiction and must be dismissed without prejudice.

> *B. Jurisdiction Over Defendants' Counterclaims for an Accounting, Breach of Contract, and Tortious Interference with Contract*

When a counterclaim is compulsory it is within the supplemental jurisdiction of the court because by definition it must arise out of the same transaction or occurrence as the original claim. *See Transitional Hosps. Corp. of Louisiana v. DBL N. Am., Inc.*, 2002 WL 27767, at *2 (E.D. La. Jan. 8, 2002) (explaining that "it is well-settled" that a compulsory counterclaim is within the ancillary jurisdiction[9] of a federal court) (citing *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988) (stating that a court has jurisdiction over a compulsory counterclaim even without an independent basis)).  If a counterclaim is compulsory, this court has supplemental jurisdiction over it, but if a counterclaim is permissive, the question is whether supplemental jurisdiction exists under Section 1367. *See* WRIGHT & MILLER, 13D FEDERAL PRACTICE & PROCEDURE § 3567.1 (explaining that "[i]t is absolutely clear that the common nucleus concept encompasses

---

[9]    The term supplemental jurisdiction encompasses what courts historically called "ancillary" and "pendent" jurisdiction.  *See Griffin v. Lee*, 621 F.3d 380, 384-5 (5th Cir. 2010); 13 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3657.

claims that arise from the same 'transaction or occurrence' as the jurisdiction-invoking claim" but also noting that the common nucleus test is broader than "transaction or occurrence").  The defendants urge that their counterclaims for an accounting, breach of contract and tortious interference with contract are compulsory, and therefore fall within the Court's supplemental jurisdiction, because "the starting point for the analysis of these claims and counterclaims is the Sales Contract."[10]  *See* WRIGHT & MILLER, 6 FEDERAL PRACTICE & PROCEDURE § 1410.1 ("When the same contract serves as the basis for both the claims and the counterclaims, the logical-relationship standard... has been satisfied[.]").

The sales contract between C-Pace's predecessor, Elliott Enterprises, and Cross Pump International, Inc. contained a royalty provision.[11]  Under that provision, Elliott Enterprises agreed to make a series of royalty payments to Cross Pump.  The sales contract also contained an agreement to execute confidentiality and non-competition agreements.[12]  These agreements were attached to the Sales Contract as "Exhibit D."[13]

---

[10]    R. Doc. 57 at 11.

[11]    R. Doc. 57-1 at ¶ 8.

[12]    R. Doc. 57-1 at 11, ¶ 11.

[13]    R. Doc. 57-3.

Defendants contend that in 2000, Guccione, C-Pace, and Cross Pump entered into an agreement transferring and assigning Cross Pump's right to royalty payments to Guccione.  According to defendants, because Guccione's right to royalties is based on the initial sales contract, and the non-competition agreements that plaintiff asserts the defendants violated also were part of the sales contract, the Court has jurisdiction over these counterclaims. As plaintiff points out, however, the non-competition agreement forms the basis of plaintiff's breach of contract claim, but not plaintiff's Lanham Act claims and LUTPA claim, the claims within this Court's original jurisdiction.  To determine whether defendants' counterclaims are within the Court's supplemental jurisdiction, the relevant question is whether defendants' counterclaims form part of the same common nucleus of operative fact as plaintiff's jurisdiction-invoking claims – here plaintiff's Lanham Act and LUTPA claims.  *See Wilson v. First Gibraltar Bank,* 22 F.3d 1095, 1994 WL 199108, at *6, n.11 (5th Cir. 1994) ("A federal court has the power and thus the discretion to exercise [supplemental] jurisdiction over state-law claims if (1) the complaint reveals that the court has jurisdiction over a substantial federal question..., and (2) the state and federal claims derive from a common nucleus of operative fact.") (quoting *Grinter v. Petr. Oper. Support Serv.,*

*Inc.,* 846 F.2d 1006, 1008 (5th Cir. 1988) (citing *United Mine Workers' v. Gibbs*, 383 U.S. 715, 725 (1966)); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)(rejecting supplemental jurisdiction when a state claim concerning a loan, while relevant to some other state claims, was irrelevant to the jurisdiction-invoking federal question claim); WRIGHT & MILLER, 13D FEDERAL PRACTICE & PROCEDURE § 3567 ("Supplemental jurisdiction can be justified only if the supplemental claim is so closely related to the jurisdiction-invoking claim that they are part of the same constitutional 'case' or 'controversy.'").  Contrary to defendants' contention, therefore, the contractual connection between defendants' counterclaims and plaintiff's state law breach of confidentiality agreement claim is not sufficient to bring the counterclaims within this Court's supplemental jurisdiction.

Further, this Court finds that defendant's counterclaims and plaintiff's jurisdiction-invoking claims do not derive from a common nucleus of operative fact.  The royalty agreement was part of the larger sales contract that transferred the intellectual property previously owned by Cross Pump to CheckPoint.  Upon examination, it is clear that this transaction, without more, does not translate into the type of shared operative facts that are necessary for the Court to exercise supplemental

13

jurisdiction.  First, defendants do not allege that the proprietary information transferred to CheckPoint in the 1993 sales contract is the protected material giving rise to plaintiff's claims of copyright infringement.  *See In re Katrina Canal Breaches Litigation*, 342 Fed. Appx. 928, 932 (5th Cir. 2009) (finding plaintiffs's unsupported assertions that claims shared a common nucleus of operative fact insufficient to permit federal jurisdiction) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008) ("The party seeking to assert federal jurisdiction ... has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists)).  If the proprietary information in the 1993 sales contract is not the same protected information that forms the basis of plaintiff's copyright claims, then the contract would provide background about the dealings between the parties, but it would not be an "operative fact."  *See* BLACK'S LAW DICTIONARY 670 (9th ed. 2009) (defining an operative fact as one "that constitutes the transaction or event on which a claim or defense is based"); *see also Burgess v. Omar*, 345 F. Supp. 2d 369, 370-372 (S.D.N.Y. 2004) ("[W]hile facts relevant to one claim might provide background with respect to the other, more is required."); *Trilithic, Inc. v. Wavetek*, 6 F. Supp. 2d 803, 806 (S.D. Ind. 1998) (declining to exercise jurisdiction when the

14

factual connection was between the background facts of the claims, not the operative facts); *Salei v. Boardwalk Regency Corp.*, 913 F.Supp 993, 998 (E.D. Mich. 1996) (finding that although the state and federal claims appeared to be causally related – but for the alleged breach of the agreement that formed the basis of the state claims, the alleged federal violation would not have occurred – the claims did not share common operative facts and therefore the Court could not exercise supplemental jurisdiction).

Importantly, the facts relevant to resolve defendant's counterclaims are separate and distinct from the facts needed to resolve plaintiff's Lanham Act and unfair competition claims.  An evaluation of the merits of defendants' counterclaims would require the Court to determine the royalty payments to which Guccione is entitled and whether CheckPoint made those payments. This, in turn, would involve an assessment of the Cross Pump's rights under the Royalty Agreement, and the royalty rights that were transferred to Guccione.  Plaintiff's Lanham Act claims and LUTPA claims relate to defendants' use of the CheckPoint trademark and marketing methods.  To prove these claims, plaintiff must prove, *inter alia*, the unfair methods of competition employed by RAM, and that their advertising claims were literally false or likely to mislead customers.  The only

15

potential place of overlap is plaintiff's sales records.  The
royalty payments are calculated using a percentage of
CheckPoint's domestic and international sales.  Plaintiff's sales
records may also be relevant to calculating damages on
plaintiff's federal claims.  If defendants are found liable for
violations of the Lanham Act, and plaintiff seeks damages based
on lost profits, then Checkpoint's sales would be relevant to
determining the appropriate amount of damages.  This possible
overlap in evidence, however, does not create a sufficient nexus
to justify the exercise of supplemental jurisdiction.  *See, e.g.,*
*Serrano-Moran v. Grau-Gaztambide*, 195 F.3d 68, 69 (1st Cir. 1999)
(finding that possibly related evidence as to damages was not a
sufficient basis for the exercise of supplemental jurisdiction
because "damages is a separate issue.").

     Nor does the ongoing and dispute-ridden relationship between
the parties create a sufficient basis for the exercise of
supplemental jurisdiction.  "Not every dispute that arises
between parties litigating a federal claim constitutes a part of
the same Article III case." *Council of Unit Owners of the Wisp*
*Condo, Inc. v. Recreational Indus., Inc.,* 793 F.Supp. 120, 122
(D.Md. 1992) (holding that plaintiff's claim for an injunction
did not arise from same operative facts as antitrust claims even
though claim part of ongoing dispute between the parties); *see*

16

*also Lyon v. Whisman*, 45 F.3d 758, 763 (3d Cir. 1995) (holding that an employment relationship alone does not create a sufficient nexus to justify supplemental jurisdiction). Further, the success of defendant's counterclaims does not depend at all on the success of plaintiff's Lanham Act or unfair competition claims. *See Trilithic,* 6 F. Supp. 2d at 807 (finding that the claims did not derive from a common nucleus of operative fact in part because the success of thee state claim did not depend on the federal claim). Accordingly, the Court finds that defendants' counterclaims are not sufficiently related to plaintiff's jurisdiction-invoking claims so as to form part of the same case or controversy for purposes of supplemental jurisdiction. *See Lyndonville*, 211 F.3d at 704 ("[W]e have found pendent jurisdiction lacking when the federal and state claims rested on essentially unrelated facts."). Because the Court does not have supplemental jurisdiction over defendants' counterclaims for an accounting, breach of contract and tortious interference with contract, these claims must be dismissed without prejudice.

17

**IV. CONCLUSION**

Because the Court does not have jurisdiction over defendants' counterclaims, the Court GRANTS plaintiff's motion to dismiss without prejudice.


New Orleans, Louisiana, this 23rd day of January, 2012.


SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

18